# EXHIBIT 20

COPY

P-14

MILWAUKEE POLICE DEPARTMENT

REPORT

District No. C.I.B.

Tuesday, January 9, 1996

In the matter of: PROPOSAL FOR SUBMISSION OF EVIDENCE TO FBI LAB FOR DNA ANALYSIS

TO: VICTOR VENUS

CAPTAIN OF POLICE

SIR:

This report pertains to the recent re-examination of numerous uncleared homicides of females in the City of Milwaukee. This report specifically outlines what measures were taken in evaluating evidentiary items in each case for suitability for DNA analysis.

Initially, thirty-two cases were re-examined. The offenses occurred between and including the years of 1980 and 1995. The sole criterion for evidence being deemed suitable for possible DNA testing was only that the evidence had the potential to establish suspect individuality and/or identity through DNA analysis. Eventually, it was determined that nineteen of the thirty-two cases may benefit from DNA analysis.

EXHIBIT 1
5/7/12 P
GRAMANN REPORTING, LTD.

MATTER OF REPORT
PROPOSAL FOR SUBMISSION OF EVIDENCE TO FBI LAB FOR DNA ANALYSIS
PAGE 2

Those cases are as follows:

M1486 - Patricia KING - occurred 08-15-80
M1821 - Karen PICKETT - occurred 11-14-85
M1897 - Debra HARRIS - occurred 10-10-86
M1898 - Tanya MILLER - occurred 10-11-86
M2208 - Dorothy LAWS - occurred 11-18-89
M2233 - Vernell JETER - occurred 02-17-90
M2241 - Delores PHILLIPS - occurred 03-18-90
M2247 - Darbie TREBING - occurred 04-14-90
M2292 - Annette LOVE - occurred 07-16-90
M2430 - Michelle WATKINS - occurred 04-22-91
M2506 - Helen SIMMONS - occurred 09-21-91
M2550 - Sylvia PETERS - occurred 01-02-92
M2805 - Mary HARRIS - occurred 09-07-93
M2983 - Ophelia PRESTON - occurred 10-22-94
M2991 - Debra MANIECE - occurred 11-20-94
M3044 - Florence MC CORMICK - occurred 04-24-95
M3066 - Sheila FARRIOR - occurred 06-27-95
M3084 - Jessica PAYNE - occurred 08-30-95
M3085 - Jacqueline JONES - occurred 09-02-95

The next task undertaken was reviewing voluminous investigative reports in the remaining 19 cases to identify

MATTER OF REPORT
PROPOSAL FOR SUBMISSION OF EVIDENCE TO FBI LAB FOR DNA ANALYSIS
PAGE 3

possible suspects.

Thirty-three persons were subsequently identified and they are as follows:

1. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: LAWS)
2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: LAWS)
3. Dwayne JETER, B/M, ▓▓▓▓▓ (VICTIM: JETER)
4. Wallace BIAS, B/M, ▓▓▓▓▓ (VICTIM: JETER)
5. David LEWIS, B/M, ▓▓▓▓▓ (VICTIM: JETER)
6. Johnny BANKHEAD, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
7. Brian CARTER, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
8. David BANKHEAD, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
9. R.L. JAMES, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
10. Sylvester THOMAS, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
11. David DOGANS, B/M, ▓▓▓▓▓ (VICTIM: PHILLIPS)
12. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: LOVE)
13. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: PRESTON)
14. Thomas WYNN Jr., B/M, ▓▓▓▓▓
    (VICTIMS: PRESTON, MC CORMICK, FARRIOR and MANIECE)
15. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: PRESTON)
16. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: PRESTON)
17. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (VICTIM: PRESTON)
18. Elezy WILSON, B/M, ▓▓▓▓▓ (VICTIM: MC CORMICK)
19. Sylvester SCOTT, B/M, ▓▓▓▓▓ (VICTIM: MC CORMICK)

MATTER OF REPORT
PROPOSAL FOR SUBMISSION OF EVIDENCE TO FBI LAB FOR DNA ANALYSIS
PAGE 4

20. Bruce POEHLMAN, W/M, ████████ (VICTIM: MC CORMICK)
21. Jerry Glenn CARSON, B/M, ████████ (VICTIM: TREBING)
22. Ronnie PENDELTON, B/M, ████████ (VICTIM: TREBING)
23. Frederick PERRY, B/M, ████████ (VICTIM: TREBING)
24. Michael GRIJALIBA, W/M, ████████ (VICTIM: TREBING)
25. Michael W. WILLIAMS, B/M, ████████ (VICTIM: TREBING)
26. James GARRETT, B/M, ████████ (VICTIM: TREBING)
27. Terrance WALLACE, B/M, ████████ (VICTIM: PAYNE)
28. Johnnie Lee JONES, B/M, ████████ (VICTIM: PAYNE)
29. Walter J.D. MOFFETT, B/M, ████████ (VICTIM: PAYNE)
30. ████████████████████████ (VICTIM: MANIECE
31. ████████████████████████ (VICTIM: MANIECE)
32. ████████████████████████ (VICTIM: MANIECE)
33. Harry ROBINSON, B.F. ████████ (VARIOUS FEMALE HOMICIDES)

All of these males had previously submitted to the taking of blood standards for evidentiary purposes. An attempt was then made to locate dried blood standards for these persons due to the fact that in most cases, the liquid blood standards were no longer refrigerated and would be of little use for DNA testing.

The Wisconsin Regional Crime Labs Milwaukee office was able to locate dried blood standards, for thirty-two of the thirty-

three possible suspects, the exception being Johnny BANKHEAD, who is a possible suspect in the homicide of Delores PHILLIPS.

At this point, the evidence inventories and Crime Lab Reports of the nineteen M-Files were researched with the intent of determining what items of evidence could be utilized for DNA testing. Eighty-eight items of evidence were identified, which consisted of blood, (including suspect and victim standards) semen, saliva, skin tissue, clothing, and a condom.

In developing an investigative strategy relative to the use of DNA analysis, Detective Lieutenants David KANE and James ARDIS, along with Detective Eric MOORE, conferred with Milwaukee County Assistant District Attorney Norm GAHN, who has considerable expertise in the application of DNA evidence, in criminal prosecutions. Assistant District Attorney GAHN suggested that DNA transmittals be submitted gradually, on a priority basis. It was the consensus opinion, that of paramount importance was attempting to determine if four relatively recent asphyxiation and/or suffocation Homicides were connected.

These homicides are of:
Ophelia PRESTON (M2983)         Debra MANIECE (M2991),
Florence MC CORMICK (M3044)     Sheila FARRIOR (M3066).

In these four cases, there were some similarities noted:

1. Three of the victims were found in vacant buildings and the remaining victim was found in a garbage cart in close proximity to a vacant building.

2. All four victims had a history of cocaine dependency.

3. All four victims had a documented history of engaging in the practice of "dope dating" (drug related prostitution.) From all appearances, these victims were not very discriminate in who they chose to date.

4. All four victims frequented the same social clubs which were designed as "support networks" for recovering addicts. It should also be noted that City of Milwaukee Forestry Worker, Thomas WYNN, frequented those social clubs and was known to be acquainted with at least two of the victims. WYNN is considered a possible suspect in these offenses.

It was decided that certain evidence from these four homicides would be submitted for DNA analysis, collectively, to facilitate an inter-comparison on the same DNA gels. It is

important to note that the fact that the four aforementioned victims engaged in prostitution related activities, gives rise to the possibility that seminal samples recovered from their cases may be from multiple donors, which could cause male factor DNA to lose some or all of its individuality.

The next case which contained evidence recommended for DNA analysis was the Jessica PAYNE Homicide (M3084). This was due to the high concentration of seminal material found in vaginal swabs taken from PAYNE. Prior to the transmittal being prepared there were three suspects arrested in connection with that offense, namely Chaunte OTT, Sammy HADAWAY and Richard GWINN. OTT was subsequently charged by the Milwaukee County District Attorney's office with First Degree Intentional Homicide and HADAWAY was charged with the Attempt Armed Robbery of PAYNE, prior to her death. GWINN was to be utilized as a witness in this offense. All three subjects denied any sexual contact with PAYNE, however, it was decided by Assistant District Attorneys GAHN and Mark WILLIAMS, that the blood standards of these three subjects, along with a blood standard of another subject, Walter MOFFETT, who PAYNE had been in the company of prior to her death, would be immediately submitted to the FBI Lab, ahead of all other transmittals. This was due to time constraints created by the

legislative goal of bringing homicide cases to trial within 90 days. The evaluation of that evidence is presently being monitored by Assistant District Attorneys GAHN and WILLIAMS

In circumstances similar to the Jessica PAYNE Homicide, there was an arrest made in the strangulation homicide of Jacqueline JONES. The suspect in that case is Floyd CARTER, who was charged with First Degree Intentional Homicide by the Milwaukee County District Attorney's office. During that offense, CARTER left a significant amount of semen on JONES' abdomen. CARTER was linked to that offense through non-DNA testing, which was done at the Wisconsin Regional Crime Lab, thus making DNA analysis in the JONES case unnecessary. However, CARTER'S blood standards may be compared to evidence from other female homicides at a later time.

At the time of this report, there is nothing to suggest that CARTER is involved in any other homicides.

Also being considered for DNA analysis is evidence from the Homicide of Annette LOVE, M2292. In that case, certain evidence would be compared to blood standards of convicted serial rapist, ▓▓▓▓▓▓▓▓, who is the suspect in that offense. Information

Case 2:09-cv-00870-RTR   Filed 03/26/11   Page 20 of 22   Document 112-1
Case 2:19-cv-01106-PP   Filed 02/02/24   Page 9 of 13   Document 104-20
HADAWA0040083

was received in 1994, from convicted murderer, ███████████, who is a relative of ████████, that ████████ had privately claimed responsibility for LOVE'S death.

Assistant District Attorney GAHN intends to submit evidence in the LOVE case to the FBI lab in the near future.

The submittal of evidence in the other listed cases will be deferred for now, in keeping with the priority strategy suggested by Assistant District Attorney GAHN. As results are obtained from the submitted cases, new transmittals can be sent.

It should also be noted that dried blood standards of convicted murderer and rapist, Harry ROBINSON, have been located and can be used in future comparison to homicides of females which pre-dated his 1993 arrests for the sex related strangulation homicide of Martha LACEY and the attempted homicide and sexual assault of Danielle ROBERTSON.

Assistant District Attorney GAHN elected to use the FBI lab to conduct DNA testing due to the fact that the utilization of private labs, such as Roche Medical or Cellmark would be cost prohibitive for the Milwaukee County District Attorney's office,

who would ultimately pay for any private testing. Assistant District Attorney GAHN related that he believes that results may be able to be obtained from the FBI in approximately four months, although he can not promise that time frame. It should be noted that the FBI Lab has a DNA profile retention system which is similar in principal to the Milwaukee Police Department's AFIS fingerprint system.

Lastly, it should be noted that future DNA testing may be able to be conducted at the Wisconsin Regional Crime Labs, Milwaukee Office. The Milwaukee office had hoped to have a DNA analysis section up and running by January 1, 1996, however, that goal was not realized due to the fact that the Milwaukee Office has not yet obtained an accreditation from the American Association of Crime Laboratory Directors, to conduct DNA testing.

Subsequent Matter Of reports will update future measures taken in this matter.

Respectfully submitted,

ERIC J. MOORE
DETECTIVE
CIB/EARLY HOMICIDE UNIT
PAYROLL 48886

EM: gb  01-09-95

Case 2:09-cv-00870-RTR  Filed 03/26/11  Page 22 of 22  Document 112-1
Case 2:19-cv-01106-PP  Filed 02/02/24  Page 11 of 13  Document 104-2
HATDAWAY 040085

CONFIDENTIAL REPORT OF LABORATORY FINDINGS
DJ-LE-103A (6/92)

Wisconsin Department of Justice
Division of Law Enforcement Services
State Crime Laboratory – Milwaukee
1578 South 11th Street
Milwaukee, Wisconsin 53204
414/382-7500
FAX 414/382-7507

*homicide*

COMPLAINT RECEIVED
DATE SEP 21 1995
TIME ___ A.M. ___ P
OFFICERS ___
ASSIGNED BY ___

Submitting Agency:

Chief Philip Arreola
Milwaukee Police Dept
Attn  Inspector Vincent Partipilo
PO Box 531
Milwaukee WI 53201

Date:  August 31, 1995

Case No:  R95-2307

Agency No.:  6816

Laboratory Analyst:

Susan V. Sanders
(Serology)

Case Name:  Miller, Tanya L. (V) -
Milwaukee, Milwaukee County,
Wisconsin

I do hereby certify this document, consisting of 2 page(s), to be a true and correct report of the findings of the State Crime Laboratory on the items examined as shown by this report.

James E. Doyle
ATTORNEY GENERAL

Designee: _____ SIGNATURE

## Summary

Semen was identified on Items C2 and C3, the vaginal and anal swabs; and on Items H and M, a pair of light blue pajama pants and a rabbit fur coat; by the microscopic identification of spermatozoa.

One blond head hair found on Item D1, the vaginal hair combings, was found inconsistent to all hair pluckings.

## Laboratory Findings

Items A through N were submitted to the Serology section for examination.  All Items were reportedly collected from Tanya L. Miller.

Items A and B, the skin tissue and the bottled blood, were not examined, however both Items will be retained at the laboratory for possible future testing.

Semen was identified on Items C2 and C3, the vaginal and anal swabs; and on Items H and M, a pair of light blue pajama pants and a rabbit fur coat; by the microscopic identification of spermatozoa.  No other tests were performed on these Items.  Portions from each Item will be retained at the laboratory for possible future testing.

M1898 /SEC /3 /PAGE 1

Item E, particles from the vaginal area, tested presumptive positive for semen. Because of the small amount present no other tests were performed. This Item will be retained at the laboratory for possible future testing.

Neither semen or blood was found on Items C1, C4, and C5, the oral swab, swab from the abdominal area, and swab from the cheek area; Items G1 through G8, the right and left fingernail clippings; Items I1 through I4, the white tube socks; Items J, K, and L, a blue long sleeve shirt, a pair of Levi Jeans, and a white sweatshirt; or on Item N, a black jacket.

Small pieces of greenish blue fibers were found on 4 fingernails from Item G, the right and left fingernail clippings. All fingernail clippings, Items G1 through G8, were transferred to the Trace section in the laboratory.

There were approximately 50 hairs found in Item D1, the vaginal hair combings. All were macroscopically consistent to Item D2, the vaginal hair pluckings except for one. There was one blond head hair that was found to be inconsistent to all hair pluckings.

There were thirty-three tiny black curly hairs found in Item D3, the body hair combings. All were macroscopically consistent with one another. They were not compared to Item D4, the body hair pluckings, because of the inability to determine origin of the hairs.

Items F1, F2, F3, and F4, the right temporal, left temporal, frontal, and occipital hair combings, were all found macroscopically consistent to Items F5, F6, F7, and F8, the right temporal, left temporal, frontal, and occipital hair pluckings.

Four hairs were found on Item H, the light blue pajama pants. Two were found macroscopically consistent with Items F5 through F8, the hair pluckings. Two were fragments and were unsuitable for comparison.

Two hairs were found on Items I2 and I4, the inside white socks. One hair, on Item I2, was found macroscopically consistent to Item D4, the body hair pluckings. The other hair, on Item I4, was found macroscopically consistent to Item D2, the pubic hair pluckings.

One hair found on Item K, a pair of Levi Jeans, was found macroscopically consistent to Item D2, the vaginal hair pluckings.

One hair found on Item L, a white sweatshirt, was found macroscopically consistent to Items F5 through F8, the head hair pluckings.

cmg