UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAM HADAWAY,

        Plaintiff,

    v.                                  Case No. 2:19-cv-01106-PP

CITY OF MILWAUKEE, et al.,

        Defendants.

# Exhibit 65

# Milwaukee Police Department

# CRIME SCENE MANAGEMENT

## Fall In-Service  1999

Prepared By:  Lt. Leroy Shaw

Criminal Investigation Bureau

MPD 801001469

## CRIME SCENE MANAGEMENT

- Uniform officers have little experience with certain follow up procedures handled by detectives.
  - Transmitting evidence to the Crime Lab for examinations and evaluating the results of those examinations.
  - Conducting follow up for the District Attorney's office.
  - Obtaining information and evidence from medical sources:
    - Medical Examiner

## CRIME SCENE MANAGEMENT

  - Women's Assessment Center / Sexual Assault Treatment Center (SATC)
  - Child Protective Center (CPC)
  - Hospitals (FROEDTERT)
  Over
- Milwaukee Police Department
  - 80-90% clearance rate compared to the national average of 60-65%
  - Near the top in clearance rates in Sexual Assault, Violent Crimes, Robbery, Burglary, Auto Thefts, etc.

## CRIME SCENE MANAGEMENT

- How? - "Blitz " type investigation.
  - As many resources as possible to the scene as quickly as possible.
- 80% of jurors polled said that the 'confession' was the most important piece of evidence presented at trial.
- With the confession being this important in obtaining convictions, our Police Department's credibility becomes crucial.

## CRIME SCENE MANAGEMENT

- How do we prove our credibility?
  - With thorough, competent investigations- all the solvability factors investigated, and all other issues addressed.
- *PROFESSIONALISM*
- MAINTAINING THE *INTEGRITY* OF THE INVESTIGATION

---

## CRIME SCENE MANAGEMENT



- Uniform officers to develop a pattern of thoroughness in all aspects of their work.
  - Criminal Investigations
  - Traffic Stops
  - Field Interviews
- A common Sense Approach
  - "Reasonable person" rule applied by courts
- "PRACTICE"

---

## CRIME SCENE MANAGEMENT

- Ability to Assess
- Ability to change their *perspective* at the scene
- Ability to communicate
- Ability to document
- Ability to verbalize in court

## CRIME SCENE MANAGEMENT

- IS IT A CRIME?
  - Adapting Incident Command Principles
    - Assess
    - Contain
    - Communicate
    - Reassess / Resolution
- First responder's responsibility to move scene from utter confusion to a controlled situation

## CRIME SCENE MANAGEMENT

- What is it?
  - Is it staged?
  - Is it falsified?
  - IS THIS AN OBSTRUCTING AN OFFICER INVESTIGATION?
- Where is it? (The crime scene)
  - Area where offense occurred
  - Area of escape
  - Area of arrest
  - Hospital

## CRIME SCENE MANAGEMENT

  - Victim
  - Suspect
  - Inside
  - Outside
  - Auto
  - Combinations of the above
- Safety of all police first
- Medical attention
- Perimeter
  - Over estimate

## CRIME SCENE MANAGEMENT

- Controlling people present
  - maintains safety for all and limits scene contamination.
- Identify solvability factors
  - Who will tell us?
    - Eye witnesses
    - victim
    - suspect
    - other lay witnesses
  - Separate as practical to protect the *integrity* of their information.

## CRIME SCENE MANAGEMENT

- Obtain a preliminary statement at the scene.
- An in depth statement away from the scene.
- Does the scene make sense with the information developed?
- Use common sense
- Use police sense
  - What is out of place
  - What doesn't belong
  - What is missing

## CRIME SCENE MANAGEMENT

- Identifying evidence
  - not just the gun, mask, bullets, casings, drugs, or stolen property (associated evidence)
  - or the possibility of fingerprints, tire marks, bullet holes (pattern evidence)
  - but also odors, or the color of smoke (transient evidence)
  - or the lighting, temperature, wind, rain (conditional evidence)
  - these are things only seen and known by the first responders

## CRIME SCENE MANAGEMENT

- Maintain the *integrity* of the evidence
  - Physical
  - Scientific
  - Legal
- *Integrity* of the scene
  - Photography that properly depicts the area and how it all relates to the crime.
  - Diagrams
    - As close to scale as possible

## CRIME SCENE MANAGEMENT

- Documentation
  - KISS
  - If you do the work, put it in the report.
  - Document who did what between partners
  - The report will be reviewed by supervisors, District Attorneys, Jurors, even through open records- the public, or the media
  - YOUR NAME IS ON THE REPORT, HAVE PRIDE IN YOUR WORK
- PROFESSIONALISM

## CRIME SCENE MANAGEMENT

- Neighborhood Canvass
  - The officer should have a basic understanding of what happened.
  - Purpose is to get information, not give it.
  - How big of an area? As big as practical.
  - Who should be included in the canvass? Everyone practical.
  - Neighbors may want to help but 'the officer didn't ask.'
  - Be able to change your perspective. Look at what happened as a neighbor would.

MPD 301001474

## CRIME SCENE MANAGEMENT

– The neighbors might have background information.
– Let them tell you what they feel is important, but glean the information- we decide what is important.
– Lock in potential defense witnesses- it puts a hole in the defense case.
• Cars in the neighborhood
– License plates, VINs, listings, addresses that the cars are parked at.

MPD-SJ-001475

CIB
District No. _____

**REPORT**

THURSDAY, APRIL 18, ___19__ 91

In the matter of___NEIGHBORHOOD CANVASSES_____

To___RONALD R. MEHL_____

_____Inspector of Police_____

Sir:

A routine, but intricate investigative procedure, often used in major investi-
gations, is the "neighborhood canvass." Lacking other evidence, a neighborhood
canvass alone can lead to the successful clearance of an investigation. Its pur-
pose is to seek and identify witnesses and/or suspects relevant to the matter under
investigation.

The purpose of this information is to set forth some suggestions to insure
that the neighborhood canvass is carried out in a competent, thorough and pro-
fessional manner.

Remember, that foremost, your assignment is to gather information not dissemi-
nate it! Further, remember that everyone you question is a potential suspect
and/or witness.

Avoid using the term "suspicious" when questioning potential witnesses, as one
might not deem "suspicious" a man walking down the street at 2:00PM. Your
questions must be specific.

On occasion, the investigating detective may submit to you a list of specific
questions to be asked. In the absence of this list, you should confer with the
investigator regarding such questions.

However, the following may be used as possible suggestions when performing a
neighborhood canvass.

1. DOCUMENT:   Date/time of contact.

2. DOCUMENT:   Name, date-of-birth, address and phone number of those
               contacted.

3. DOCUMENT:   Names, ages and occupations of others residing at the address.

4. DOCUMENT:   Names of any visitors and guests who were at the residence
               during (time of offense).

5. INQUIRE:    Did any service people (Gas, Electric, etc.) call on this resi-
               dence on (time of offense)?

6. INQUIRE:    Did any door-to-door sales persons call on this residence on
               (time of offense)?

7. INQUIRE:    Did you or any other members of this residence walk or drive
               past (location of offense) at (time of offense)?

DATE:    THURSDAY, APRIL 18, 1991

     8. INQUIRE:    Are you or any other members of this residence, acquainted with (victim or suspect)?

     9. INQUIRE:    Did you see (victim or suspect) on (time of offense)?

    10. INQUIRE:    Did you see any vehicles parked at or near the crime scene?

    11. INQUIRE:    Is there anyone you know of, in the neighborhood who might do something like this?

    12. INQUIRE:    If the person is acquainted with (victim or suspect), obtain information regarding their habits, visitors, and reputation, etc.

    13. INQUIRE:    "Is there anything else I have failed to ask you, that you think may be helpful to my investigation?"

    14. DOCUMENT:    Before leaving, obtain best time to contact other witnesses who were not present at time of contact.

Respectfully submitted,

*David Kane*

David Kane
Detective Lieutenant - Days
Criminal Investigation Bureau

DK/mlb  4-18-91

I. UPON ARRIVAL

A. Observe – See what you have - watch for signs of danger.
– Establish and secure perimeter well outside crime scene using tape, etc.

B. Stabilize – Don't allow criminal activity to continue.
– Eliminate danger - render any first aid needed.
– Protect scene and evidence.
– Call additional help as needed.
– In effect freeze the scene and cause any activity not related to the offense to cease, e.g. close taverns, businesses.

C. Question and investigate - answer the who, what, where, why, how, when of the crime.

– Separate witnesses and detain.
– Document anyone who enters crime scene.

II. OBTAIN

A. Information and statements from person(s) involved:

1) Name - last, (maiden name), first, middle, race/sex, age, date of birth, home phone, home address, physical description, clothing description, employer name, address, and phone number.

2) Identify people as victim, complainant, witness, suspect, accomplice, neighbor, relative, bystander, etc.

3) Obtain accurate statement from all persons interviewed to include what they experienced with their five senses.

a) What they saw, heard, felt, smelled, and what was said.
b) What they think regarding suspects and reason for offense.
c) Document any injuries and treatment or disabilities.
d) Clarify description of observable injuries.

4) Question neighbors, bystanders, and other people that may be involved.

- 1 -

MIL-1-SJPD001478

B. Information regarding the offense:

   1) Dates and times of occurrence.

   2) Place of occurrence.

   3) What was the criminal act, what was taken, what was damaged.

   4) How did the crime take place:

      a) Point of entry.
      b) Place of occurrence.
      c) Theft by fraud or trick, etc.
      d) Weapon(s) used.

   5) Any previous, any insurance, any other victim(s), how long victim has lived at address, who victim lives with, any chance for prints or need for photos.

   6) Who was the last to leave or lock up - who discovered crime.

   7) Check area around scene for evidence, etc. (inside and/or outside).

   8) Photograph when required and make sure every conceivable angle is covered.

   9) If item to be checked for prints is moveable, hand carry to Identification Division.

   NOTIFY SHIFT COMMANDER - COMPLETE ANY FOLLOW UP INVESTIGATION

Case 2:19-cv-01106-PP   Filed 03/20/24   Page 12 of 21   Document 119-65   MPD-SJ0001479

INVESTIGATION SHOULD ANSWER THE WHO, WHAT, WHERE, WHY, HOW, AND
WHEN OF THE CRIME

WHO     Who saw, who did, who owns, who said, who is injured, who
        touched, who heard, who smelled what, who had motive and/or
        opportunity, etc.

WHAT    What was taken, what was damaged, what burned, what was used,
        what was found, what was done, what happened, etc.

WHERE   Where did it take place, where was it found, where do they
        live, where were the items, where is the point of entry,
        where did suspects go, etc.

WHY     Why did it happen, why did it occur here, why were certain
        items taken or damaged, why is a certain person a suspect,
        why is a certain person the victim, etc.

HOW     How did it happen, how was entry gained, how did the fire
        start, how was the house targeted, how could this have been
        prevented, how did suspects get to or get away from scene, etc.

WHEN    When did it occur, when did complainant leave, when was crime
        discovered, when will owner return, when was the last time
        this occurred, when will the suspect return, etc.

- 3 -

Case 2:19-cv-01106-PP   Filed 03/20/24   Page 13 of 21   Document 119-66   MIL-18-001480

III. DEATH INVESTIGATIONS

    A. Proceed as in steps I and II.

    B. Note all people present. Detain as necessary.

    C. Survey scene for condition.

       1) Check for evidence of crime or struggle.

       2) Note location of body at scene.

       3) Check for any forced entry.

       4) Check doors, windows for securable locking mechanisms.

    D. Call for medical help if body not pronounced dead.

    E. Note condition and position of body. Do not move body.

       1) Signs of lividity, rigor mortis, cuts, bruises, color/temperature, any fluids coming from ears or nose, odors, condition of hair, signs of trauma.

       2) Position of trunk, head, arms, legs, fingers.

       3) Expression of face, eyes open or closed.

       4) Clothing type and condition
          a) Color, material, wet/dry, open buttons/zippers, rips, stains, burns, etc.

       5) Determine next of kin, other family members or close friends.

    G. Chalk and/or photograph as required.

    H. Notify shift commander.

- 4 -

MPD-SJ0B001481

I. Have body conveyed to be pronounced dead.

    1) If it appears to be homicide have officer accompany body, retain clothing. Officer always to accompany a body or victim for evidentiary purposes.

    2) If medical personnel stop treatment or refuse to convey, notify shift commander and determine if medical examiner will convey or respond.
Note names of medical personnel and reason for no conveyance.

    3) Record conveyance, arrival time, person who pronounced body dead and time, along with cause, if known.
      a) Document any other signs of trauma discovered.

J. Protect scene if foul play is suspected.

K. Interview neighbors and bystanders. Document all people living in a residence.

    1) For possible witness and background information.

L. Coordinate with Detective Bureau at the crime scene.

M. Suicides.

    1) Use special care to insure that what appears to be a suicide is not just a cover up for murder.

    2) Hanging - carefully note type of rope and knot used. Also note marks on neck. Do not cut through knots.

    3) Weapons - document exact location and condition of recovered weapons. Example - cylinder position. Do not handle weapons unless necessary.

    4)· Overdose - locate and recover substance and container used to overdose. In deaths, document medication and turn over to the Medical Examiner.

- 5 -

IV. ARSON AND FIRE INVESTIGATION

A. Proceed with investigation as listed in steps I and II.

B. Call for assistance as required.

1) Fire Department.

2) Emergency medical help.

3) Additional police units for traffic/crowd control, to assist
with the investigation, to provide security for Police/Fire
Department equipment.

C. Document all Police/Fire and Medical units on scene and their
function at the scene.

1) Obtain name of Fire Department commanding officer as scene.

2) Obtain Fire Department's commanding officer's opinion as to
origin of fire, estimated amount of damage, people injured,
any sign of accellerant, any other information the Fire
Department may have developed which is pertinent to the
investiation.

3) Obtain information regarding any deaths, displaced people due
to fire.

4) Any evidence of other crimes.
a) Insurance fraud, burglary, homicide.

- 6 -

MIL-835001483

5) List owner and occupant(s) of building.

6) Note condition of all doors, locks, windows, electrical outlets, gas pipes.

7) Origin of fire.
   a) Note burn pattern, amount of charring, smells or stains that seem to be foreign to the scene, color and amount of smoke and flames, igniting devices, timing devices, flares.

D. Notify shift commander and determine if photos and Detective Bureau needed.

- 7 -

MPD 300001484

V.  BURGLARY

    A.  Check for the following:

        1) Footprints, tire marks, drag marks, abandoned loot, tools, clothing, etc.

        2) Point of entry, object of crime, point of exit, obvious items of value passed up, fingerprints.

        3) Check point of entry for hairs, fibers, blood, tool marks, chips of paint, glass, tools or pieces of tools.
            a) Suspect may have left hairs, fibers and blood, but may have picked up slivers of glass or paint chips.

        4) Document and recover evidence.

        5) Notify shift commander and determine if photos and Detective Bureau are needed.

VI. HAZARDOUS MATERIAL INCIDENT

    A.  Approach cautiously - don't rush approach from up-wind.  Find out what you are facing.

    B.  Identify hazard.
        1) Note labels, placards.
        2) Talk to people.

    C.  Secure scene - no unauthorized persons to have access.
    D.  Obtain help needed - Fire Department, additional squads, railroad personnel, etc.

    E.  Decide on entry site.

Case 2:19-cv-01106-PP   Filed 03/20/24   Page 18 of 21   Document 119-65
MPD-SJPD-001485

VII. EVIDENCE

    A. Before recovering or moving any evidence, determine if it should be photographed or marked in place.

    B. Recover evidence in manner that causes the least amount of disturbance to the physical state of the evidence.

        1) Surfaces may contain other evidence that can only be processed in the lab.

    C. Avoid touching evidence such as blood or body fluids.

        1) To avoid contaminating same.

        2) To avoid coming into contact with disease.

    D. Make diagram of scene if necessary.

    E. When you inventory evidence you are responsible. Request assistance of CIB regarding proper handling.
WHEN IN DOUBT DO NOT GUESS, ASK FOR ASSISTANCE.

    F. Be aware of proper packaging techniques to preserve trace evidence.

    G. Have everything which might yield identifiable fingerprints checked.

Case 2:19-cv-01106-PP   Filed 03/20/24   Page 19 of 21   Document 119-16501486

## HOSPITAL INVESTIGATION

IDENTIFY BY NUMBER

1 Laceration
2 Abrasion
3 Hematoma
4 Bruise
5 Deformity
6 Open Fx
7 GSW
8 Stab
9 Burn
10 Edema
11 Amputation
12 Avulsion
13 Pain

**VICTIM**

NAME:_____
DOB:_____PH#_____
ADDRESS_____
OCCURED ON:_____AT:_____
LOCATION:_____
CONVEYED BY:_____
_____
CONVEYED FROM:_____
CONVEYED TO:_____
ADMITTED AT:_____
TREATED BY: DR._____
INJURIES:_____
_____
CONDITION:_____
PRONOUNCED BY:_____
PRONOUNCED AT:_____

## HOSPITAL INVESTIGATION

IDENTIFY BY NUMBER

1 Laceration
2 Abrasion
3 Hematoma
4 Bruise
5 Deformity
6 Open Fx
7 GSW
8 Stab
9 Burn
10 Edema
11 Amputation
12 Avulsion
13 Pain

**VICTIM**

NAME:_____
DOB:_____PH#_____
ADDRESS_____
OCCURED ON:_____AT:_____
LOCATION:_____
CONVEYED BY:_____
_____
CONVEYED FROM:_____
CONVEYED TO:_____
ADMITTED AT:_____
TREATED BY: DR._____
INJURIES:_____
_____
CONDITION:_____
PRONOUNCED BY:_____
PRONOUNCED AT:_____

## HOSPITAL INVESTIGATION

IDENTIFY BY NUMBER

1 Laceration
2 Abrasion
3 Hematoma
4 Bruise
5 Deformity
6 Open Fx
7 GSW
8 Stab
9 Burn
10 Edema
11 Amputation
12 Avulsion
13 Pain

**VICTIM**

NAME:_____
DOB:_____PH#_____
ADDRESS_____
OCCURED ON:_____AT:_____
LOCATION:_____
CONVEYED BY:_____
_____
CONVEYED FROM:_____
CONVEYED TO:_____
ADMITTED AT:_____
TREATED BY: DR._____
INJURIES:_____
_____
CONDITION:_____
PRONOUNCED BY:_____
PRONOUNCED AT:_____

MPD SJH001487

**INCIDENT INFORMATION**

| INCIDENT | | DATE OF INCIDENT/ACCIDENT | | REP CON # |
| VICTIM | | LOCATION OF INCIDENT/ACCIDENT (Address) | | DIST |

| JUVENILE LAST NAME | FIRST | MID | DATE OF BIRTH | O DETAINED O ORDERED TO MCCC O OTHER |

| QUAN. | TYPE OF PROPERTY | DESCRIPTION | | SERIAL # | CODE # | VALUE |

## NEIGHBORHOOD CANVAS QUESTIONNAIRE

### PERSON CONTACTED ON:_____

|  | DATE | TIME |

| LAST | FIRST | M.I. | RACE/SEX | D.O.B. |

| ADDRESS | HOME PHONE |

| WORK ADDRESS | WORK PHONE |

PROXIMITY TO DEATH SCENE

A) ANY OBSERVATION OF VICTIM:　　　YES　　　NO

B) ANY OBSERVATION OF POSSIBLE SUSPECT OR SUSPECT VEHICLE:　　　YES　　　NO

C) ANY VISITORS TO NEIGHBORHOOD (Salespersons, solicitors, delivery persons, street repair workers, utility workers, etc.):　　　YES　　　NO

D) WHO ELSE RESIDES/WAS PRESENT AT THIS LOCATION ON DATE IN QUESTION:

| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |
|---|---|---|---|---|
| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |
| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |
| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |
| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |
| NAME | RACE/SEX | D.O.B. | ADDRESS | PHONE |

EXPLAIN ALL *YES* ANSWERS IN DETAIL BELOW OR ON SUPPLEMENTARY REPORT (FORM PO15-B)

_____
_____
_____
_____
_____
_____

| REPORTING OFFICER | PAYROLL # | LOC CODE | SUPERVISOR SIGNATURE | |