UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAM HADAWAY,

    Plaintiff,

v.                Case No. 19-cv-1106-pp

CITY OF MILWAUKEE, CARL BUSCHMANN,
DETECTIVE JAMES DEVALKENAERE,
ROBERT SIMON and UNKNOWN
EMPLOYEES OF THE CITY OF MILWAUKEE,

    Defendants.

**ORDER DENYING PLAINTIFF'S CIV. L. R. 7(H) EXPEDITED NON-DISPOSITIVE MOTION (DKT. NO. 85)**

  This civil rights case involves allegations that the defendants violated plaintiff Sam Hadaway's constitutional rights by forcing him to falsely incriminate himself in a days-long interrogation, then using the resulting statements against the plaintiff to gain a wrongful conviction. Dkt. No. 1. The case took some time to proceed through the discovery phase, in part because of changes in staff at the Milwaukee City Attorney's Office and in part because the parties attempted mediation. This order (belatedly) addresses the plaintiff's outstanding discovery motion.

  On June 6, 2023, the plaintiff filed a Civil Local Rule 7(h) expedited non-dispositive motion asking the court to limit the scope of a Rule 35 examination of the plaintiff. Dkt. No. 85. Specifically, the plaintiff asked the court to prohibit the defendants' psychological expert, Dr. Steven Gaskell, from asking the

1

plaintiff questions "regarding Plaintiff's whereabouts on the night of the crime, his interactions with police, including Defendants, during the Payne investigation and Defendants' interrogations of him in 1995 through 2012." Id. at 3. The court will deny the plaintiff's motion.

I. Background

The July 31, 2019 complaint alleges that the defendants violated the plaintiff's rights through the investigation of, and his eventual conviction for, the 1995 murder of Jessica Payne. Dkt. No. 1 at ¶¶1-6, 16, 77-119. Among other things, the plaintiff alleges that "the Defendant Officers exploited his vulnerabilities and coerced and threatened him into making a false statement[,]" which "implicat[ed] himself and Mr. Ott[, his eventual co-defendant,] in the murder of Ms. Payne." Id. at ¶¶23, 29. The plaintiff claims that, largely due to this false confession, he pled guilty to a lesser charge of attempted robbery and agreed to "repeat his false confession at Mr. Ott's criminal trial." Id. at ¶¶39-42. Ott was convicted of the murder of Jessica Payne and sentenced to life in prison, while the plaintiff was sentenced to five years in prison. Id. The plaintiff alleged that he "served out his almost five-year sentence, but never gave up on proving his innocence." Id. at ¶5. The plaintiff asserted that "[e]ventually, the Wisconsin Innocence Project took up his cause, and in 2018, his conviction was overturned." Id.

The plaintiff alleged that "[w]ithout the Defendants' misconduct, [he] would never have been convicted." Id. at ¶71. The plaintiff explained that "[d]uring his nearly 5 years of incarceration, [he] was detained in harsh and

dangerous conditions, which was particularly difficult given [his] physical and mental disabilities." Id. at ¶73. In expanding on his damage allegations, the plaintiff stated:

> 75. For the following two decades, even after his release from incarceration, Plaintiff continued to suffer emotional and physical harm as a result of Defendants' misconduct, which falsely branded him as a convicted murderer.
>
> 76. In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, the Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, and other physical and psychological effects.

Id. at ¶¶75-76.

When detailing his claim for "Coerced and False Confession" under 42 U.S.C. §1983, the plaintiff alleged that "[t]he misconduct described in this Count was done using psychological coercion and torture and was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest." Id. at ¶78. He alleged that "the Defendant Officers participated in, encouraged, advised, and ordered an unconstitutional, multiple-day-long interrogation of Plaintiff, who was known to suffer intellectual and physical impairments." Id. at ¶79. The plaintiff concluded his discussion of this count by stating, "As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above." Id. at ¶82.

3

## II. Parties' Arguments

### A. <u>The Plaintiff's Brief in Support of the Motion (Dkt. No. 85)</u>

The plaintiff began by detailing the relevant factual background for the motion, which the defendants do not appear to contest. Dkt. Nos. 85 at 1-2, 87 at 1. The plaintiff stated that he "disclosed Dr. Vincent Culotta to offer opinions on the emotional and psychological damages that Plaintiff suffered as a result of his wrongful conviction and imprisonment." Dkt. No. 85 at 1. The plaintiff explained that "Dr. Culotta conducted an in-person examination of [the plaintiff] and administered neurological tests" before issuing an evaluative report discussing the plaintiff's mental health. <u>Id.</u> According to the plaintiff, the defendants "retained Dr. Steven Gaskell as a rebuttal expert and have requested that Dr. Gaskell evaluate [the plaintiff] and perform his own battery of neurological testing." <u>Id.</u> The plaintiff "does not dispute that Defendants can evaluate Plaintiff pursuant to Rule 35" and that "the Parties have negotiated the temporal duration of the examination, the testing that Dr. Gaskell will administer, and the scope of his examination save one issue: whether Dr. Gaskell can ask [the plaintiff] about questions concerning Defendants' interrogation of him during the Payne homicide investigation." <u>Id.</u> at 1-2.

The plaintiff recounts that "'[d]istrict courts enjoy extremely broad discretion in controlling discovery.'" <u>Id.</u> at 2 (quoting <u>Leffler v. Meer</u>, 60 F.3d 369, 374 (7th Cir. 1995)). The plaintiff explains that "[t]his includes discretion in controlling the scope of expert discovery, including the scope of Rule 35 examination." <u>Id.</u> (citing <u>Hart</u>, 2011 WL 3687622, at *3; <u>Brown v. City of

4

Chicago, Case No. 19 CV 4082, 2023 WL 3320427, at *4 (N.D. Ill. May 9, 2023)).

The plaintiff argues that the court should reject the "Defendants' insistence that Dr. Gaskell be permitted to expand the scope of his examination into the underlying facts of the murder and Defendants' attendant interrogation of Plaintiff, which were not covered by Dr. Culotta's examination and report[.]" Id. First, the plaintiff contends that because his counsel will not be present during the examination, the "Defendants should not get to use Dr. Gaskell's exam to conduct a second (unrepresented) deposition of Plaintiff." Id. at 2-3. Second, the plaintiff avers that as a "rebuttal expert," Dr. Gaskell's examination should not exceed the scope of Dr. Culotta's examination and that "Dr. Culotta did not question [the plaintiff] about the Payne investigation, Plaintiff's interactions with Defendants, or their interrogations of him." Id. at 3. Third, the plaintiff maintains that "Dr. Gaskell should be limited to issues relevant to damages and barred from delving into questioning that goes to issues of liability." Id. at 3. Finally, the plaintiff asserts that the defendants will not suffer any prejudice if the court were to limit Dr. Gaskell's questioning because "[t]o the extent Dr. Gaskell believes Plaintiff's whereabouts on the night of the murder or his interrogation of the Defendants is relevant to his exam, which it is not, he can review Defendants' deposition of Plaintiff in this matter." Id. The plaintiff concludes that "Dr. Gaskell's Rule 35 examination of Plaintiff should exclude questioning regarding Plaintiff's whereabouts on the night of the crime, his interactions with police, including Defendants, during

5

the Payne investigation and Defendants' interrogations of him in 1995 through 2012." Id.

      B.      The Defendants' Brief in Opposition (Dkt. No. 87)

The defendants argue that Dr. Gaskell "should be allowed to conduct his exam of Plaintiff in the manner he sees fit." Dkt. No. 87 at 1. The defendants contest the plaintiff characterizing Dr. Gaskell's examination as an attempt at "re-deposing Plaintiff outside the presence of his counsel." Id. They note that "defense counsel will not be present either[, n]or will defense counsel tell Dr. Gaskell how to conduct his exam[,]" asserting that the "Defendants rely solely on Dr. Gaskell's expertise in that regard." Id. The defendants contend that "[v]irtually any Rule 35 exam of a plaintiff that occurs after the plaintiff's deposition will involve revisiting issues addressed in that deposition." Id. They assert that the "[p]laintiff cites no authority stating that overlap between a deposition and a Rule 35 exam is improper or warrants Court intervention simply because counsel is absent from the latter." Id.

The defendants also contend that, "[a]t this phase, Dr. Gaskell is not limited to rebutting Plaintiff's expert's opinion" and that the plaintiff has cited no authority or reason as to why "Plaintiff's expert should have the advantage of controlling what Dr. Gaskell asks." Id. at 1-2. The defendants assert that "Dr. Gaskell can examine any aspect of Plaintiff's alleged mental damages that he is qualified to examine, and which Plaintiff has made an issue in this case, regardless of whether Plaintiff's expert chose to do so." Id. at 2 (citing Allshouse v. JBL Ltd., Case No. 05-CV-403, 2006 WL 517615, *2 (S.D. Ill. Mar. 2, 2006);

6

Hart, 2011 WL 3687622, at *2). The defendants say that, "[t]o the extent Dr. Gaskell's opinions go beyond those of Plaintiff's expert, the discovery schedule lets Plaintiff issue his own rebuttal opinion in response." Id. (citing Dkt. No. 83).

The defendants contend that the plaintiff's argument that "Dr. Gaskell 'should be limited to issues relevant to damages and barred from delving into questioning that goes to issues of liability' . . . is specious, and its limiting principle is dangerously restrictive, because Plaintiff's allegations create an overlap between liability and damages." Id. (quoting Dkt. No. 85 at 3). As an example, the defendants argue that "Plaintiff's alleged innocence" and "Plaintiff's interactions/interrogations with Defendants" are relevant to the plaintiff's theory of liability as well as his theory of damages. Id. The defendants explain that "Dr. Gaskell will not opine on whether Plaintiff is telling the truth about his innocence or about Defendants' conduct[,]" but assert that "he should be permitted to ask about these underlying causes of Plaintiff's injuries as foundational background for his exam, and to better determine whether Plaintiff's purported injuries actually resulted from these alleged acts." Id. at 3. The defendants suggest that, "[i]nstead of prospectively limiting Dr. Gaskell's exam based on Plaintiff's hypothetical fears, it is more prudent to allow the exam to proceed the way Dr. Gaskell deems fit." Id. The defendants conclude that "[i]t may be that when all is said and done, this dispute is much ado about nothing[]" but that "[f]or the time being, the difference between liability and

7

damages in this case is too nuanced to restrict Dr. Gaskell in the manner Plaintiff requests." Id.

### III. Legal Standard

"Managing the discovery process is the district court's business . . . ." Wanko v. Bd. of Trustees of Ind. Univ., 927 F.3d 966, 969 (7th Cir. 2019) (quoting Brill v. Lante Corp., 119 F.3d 1266, 1275 (7th Cir. 1997)). "The district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." Id. (quoting Scott v. Chuhak & Tecson, P.D., 725 F.3d 772, 785 (7th Cir. 2013)). Accordingly, "a district court has broad discretion over pretrial discovery rulings . . . ." Therman Design, Inc. v. Am. Soc'y of Heating, Refrigerating and Air-Conditioning Eng'rs, Inc., 755 F.3d 832, 837 (7th Cir. 2014) (citing Spiegla v. Hull, 371 F.3d 928, 944 (7th Cir. 2004)). That broad discretion includes discretion in issuing "orders pertaining to Rule 35 examinations." Does 1-5 v. City of Chicago, Case No. 18-CV-03054, 2019 WL 2076260, at *1 (N.D. Ill. May 10, 2019) (citing Miksis v. Howard, 106 F.3d 754, 758–59 (7th Cir. 1997)).

### IV. Analysis

At the time the plaintiff filed the motion—June 6, 2023—the deadline for completing expert discovery was September 1, 2023. Dkt. No. 83. After the plaintiff filed this motion, the parties agreed more than once to modify the *summary judgment* briefing schedule; the court implemented each of the proposed modifications. Dkt. Nos. 90, 94, 98, 101. None of the stipulations or status reports mentioned that the parties were waiting for the court to rule on

8

this motion before filing summary judgment motions, and in February of this year, the defendants timely filed their motion for summary judgment. Dkt. No. 102. The parties are briefing that motion now. The court deeply regrets its delay in ruling on the motion to limit the scope of the examination of the plaintiff.

The plaintiff explains that the parties have agreed that Dr. Gaskell may examine the plaintiff "pursuant to Rule 35." Dkt. No. 85 at 1. The plaintiff reports that the parties have negotiated "the temporal duration of the examination, the testing that Dr. Gaskell will administer, and the scope of his examination save one issue," then moves on to discuss his concerns about Dr. Gaskell questioning the plaintiff about the defendants' interrogation of the plaintiff regarding the homicide. Dkt. 85 at 1-2. The defendants, too, discuss the requirements of a "Rule 35 exam" and caselaw pertaining to Rule 35. Dkt. No. 87 at 1-2. The parties' reliance on and arguments about Rule 35 are perplexing.

Federal Rule of Civil Procedure 35(a)(1) states that the "*court* where the action is pending" may order a party "whose mental . . . condition . . . is in controversy to submit to a . . . mental examination by a suitably licensed or certified examiner." (Emphasis added.) The rule mandates that the court may issue such an order "*only on motion for good cause* and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A) (Emphasis added). The rule also requires the court's order to "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who

9

will perform it." Fed. R. Civ. P. 35(a)(2)(B). A party seeking an order for a Rule 35 examination must show two things: (1) that the plaintiff has put his physical or mental condition "in controversy" and (2) that there is "good cause" for the exam. Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964). These requirements are not "mere formalit[ies]," nor are they "met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Id. at 117. "For determining good cause, courts have looked at whether other discovery methods have been utilized and whether the requested examination is 'needlessly duplicative, cumulative, or invasive.'" In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig., Case No. 114-cv-06016, 2017 WL 2403052, at *1 (S.D. Ind. June 1, 2017) (quoting McDonald v. Southworth, Case No. 07-cv-217, 2008 WL 2705557, at *3 (S.D. Ind. July 10, 2008)).

In the ten months that this case has been pending, neither party has filed a motion asking the court to order the plaintiff to submit to a mental examination under Rule 35. The court has not been presented with proof that the plaintiff's mental condition is in controversy or that there is good cause for a Rule 35 exam. Because no party has filed a motion asking the court to order the plaintiff to submit to such an examination, the court has not issued an order requiring him to do so. Rule 35 does not apply.

The plaintiff says that the defense hired Dr. Gaskell "as a rebuttal expert "[t]o respond to" the opinions of the plaintiff's experts. Dkt. No. 85 at 1. Federal Rule of Civil Procedure 26(a)(2) governs discovery related to the parties' experts. The rule requires parties to disclose experts, discusses which experts must provide written reports and what must be in those reports and prescribes the timing for disclosing expert testimony. Rule 26(b)(1) describes the scope of discovery—including expert discovery—allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues , and whether the burden or expense of the proposed discovery outweighs its likely benefit." It also provides that information within that scope of discovery "need not be admissible in evidence to be discoverable."

Rule 30 governs depositions. It allows a "party" to depose any person, Rule 30(a)(1), and the rule assumes that counsel for the parties will be present to examine and cross-examine the deponent and make objections, Rule 30(c)(1) and (2).

These rules require the defendants to disclose the name of their expert (which they have done). They allow the defendants to obtain discovery regarding any nonprivileged matter that is relevant to the plaintiff's claims or their defenses and that is proportional to the needs of the case. And they allow

11

the *parties* to conduct depositions, with counsel present at the deposition. But the dispute here does not arise in the context of a *party* conducting a *deposition* of the opposing party or other witness to obtain discovery. The parties' dispute arises in the context of their voluntary agreement that the *defendant's expert* may conduct a *mental examination* of a party. Rule 35 does not provide for such a procedure, nor does Rule 30.

As best the court can tell, the parties have agreed to act as if one of them had filed a Rule 35 motion, the court had granted it and the court had selected Dr. Gaskell as the Rule 35(a)(2)(B) examiner (even though none of those things have happened). They appear to have agreed to the procedures governing the conduct of a Rule 35 examination even though Dr. Gaskell is not a court-designated Rule 35 examiner. Given that apparent agreement, the court, too, will rely on the caselaw governing Rule 35 examinations in evaluating the plaintiff's motion, even though Dr. Gaskell is not a court-identified psychological examiner.

Courts have held that "a Rule 35 examination is a medical examination, not an adversarial process[.]" Jump v. Montgomery Cnty., Case No. 13-3084, 2015 WL 9701166, at *1 (C.D. Ill. Sept. 30, 2015) (collecting cases); see also Scheriff v. C.B. Fleet Co., Case No. 07-C-873, 2008 WL 2434184, at *2 (E.D. Wis. June 16, 2008) ("[R]ecent cases suggest that Rule 35 examinations are not to be *de facto* adversarial exams and thus the fact that [an examiner] has been retained [by a party] does not necessarily make [them] an adversary, nor does it render [their] conclusions inherently suspect."). When evaluating the scope of a

12

Case 2:19-cv-01106-PP    Filed 03/31/24    Page 12 of 19    Document 131

Rule 35 examination, the court begins "with the presumption that the expert retained to conduct the examination is professional, independent and objective, as opposed to an agent or advocate for the side that retained [them]." Scheriff, 2008 WL 2434184 at *3. Based on this presumption, courts have required a party "question[ing] the professionalism, ethics, [or] honesty of [an examiner]" to provide evidence beyond "suggesting that [the examiner] might behave improperly or testify untruthfully[.]" See Giovanoni v. Quickway Transportation, Inc., Case No. 18-cv-00218, 2021 WL 4953265, at *2 (S.D. Ind. Jan. 15, 2021); see also Haymer v. Countrywide Bank, FSB, Case No. 10 C 5910, 2013 WL 657662, at *6-7 (N.D. Ill. Feb. 22, 2013) ("Plaintiff's general and unsupported concern that [the Rule 35 examiner] will subject [the plaintiff] to an 'interrogation' or 'exceed the limits of the Court-ordered exam' is insufficient to overcome the possible harm to the examination if a witness is present."). Absent such evidence, courts generally have assumed that a Rule 35 examiner will comply with ethical obligations and conduct the examinations in accordance with their professional judgment. See Hart v. Roundy's Supermarkets, Inc., Case No. 10-C-824, 2011 WL 3687622, at *2 (E.D. Wis. Aug. 23, 2011) (noting that the Rule 35 examiner "will follow standard medical practice and, in her professional judgment, utilize the clinical process and tests that are recognized and would be used by other recognized and licensed professionals if they were performing an evaluation of the plaintiff's cognitive abilities and mental health claims"); Haymer, 2013 WL 657662, at *6-7 (observing that the Rule 35 examiner "is bound by medical ethics to use her

13

medical judgment to evaluate Plaintiff, and there is no reason to believe that her examination will be overreaching merely because she has been selected by [the opposing party]").

The only issue before the court is whether the court should prohibit Dr. Gaskell from asking the plaintiff questions "regarding Plaintiff's whereabouts on the night of the crime, his interactions with police, including Defendants, during the Payne investigation and Defendants' interrogations of him in 1995 through 2012." Id. at 3. Relying on the caselaw governing Rule 35 examinations, the court concludes that such a prohibition is not warranted.

The court first observes that although the plaintiff has argued that "Dr. Gaskell should be limited to issues *relevant to damages* and barred from delving into questioning that goes to issues of liability[,]" dkt. no. 85 at 3 (emphasis added), the plaintiff has not explained why the questions he wants the court to prohibit Dr. Gaskell from asking are not "relevant to damages." The complaint alleges that, "[i]n addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, *the Defendants' misconduct continues to cause* Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, and other physical and psychological effects." Dkt. No. 1 at ¶76. When discussing the "psychological coercion[,]" "torture" and "multiple-day-long interrogation" to which the defendant officers allegedly subjected the plaintiff, id. at ¶¶78-79, the plaintiff alleged that "*[a]s a result of Defendants' misconduct described in this Count*, Plaintiff suffered loss of liberty, great mental anguish, humiliation,

14

degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above[,]" Id. at ¶82 (emphasis added). These allegations assert a causal connection between the plaintiff's alleged damages and "his interactions with police, including Defendants, during the Payne investigation and Defendants' interrogations of him in 1995 through 2012." Dkt. No. 85 at 3. It does not appear that the plaintiff has alleged the same causal connection between his damages and his "whereabouts on the night of the crime[,]" but without further information, the court is hesitant to "micro-manage how . . . a licensed medical professional skilled in [his] field[] chooses to perform [his] testing." Does 1-5, 2019 WL 2076260, at *3. To the extent these topics relate to the plaintiff's damages, Dr. Gaskell should be allowed flexibility in his examination, as long as he "follow[s] standard medical practice and, in [his] professional judgment, utilize[s] the clinical process and tests that are recognized and would be used by other recognized and licensed professionals if they were performing an evaluation of the plaintiff's cognitive abilities and mental health claims." Hart, 2011 WL 3687622, at *2.

The plaintiff has presented no evidence to support his characterization of Dr. Gaskell's examination (one to which he appears to have agreed under the terms of Rule 35) as a "second (unrepresented) deposition of Plaintiff." Id. at 2-3. As the court has explained, unlike a deposition, a Rule 35 examination is not an adversarial process, but a medical examination, and there is a presumption that the expert is professional, independent, objective and not an

15

advocate for one side or the other. The plaintiff has presented no evidence to overcome this presumption, asserting only that he is "intellectually and physically limited," that the examination will occur "outside the presence of his counsel" and that the defendants previously had deposed him. Dkt. No. 85 at 2-3. If, as the parties appear to assume it will, the court treats Dr. Gaskell as a court-identified Rule 35 examiner, none of these facts transform Dr. Gaskell's examination into an "adversarial process." See Hart, 2011 WL 3687622, at *3 (determining "there is no indication of unfairness or any concrete reason to conclude that [the Rule 35 examiner] would attempt to take advantage of the plaintiff during the examination[,]" despite the plaintiff's "cognitive limitations"); Haymer, 2013 WL 657662, at *6-7 (rejecting the plaintiff's argument that "an unsupervised examination could easily be conducted in biased fashion, exceed the limits of the Court-ordered exam, or could be transformed into a *de facto* deposition where plaintiff is not represented by counsel"); Does 1-5, 2019 WL 2076260, at *3 ("It is not uncommon for a district court to order a Rule 35 examination after the close of fact discovery."). Absent evidence demonstrating that Dr. Gaskell would act outside his ethical and professional obligations, there is no support for the plaintiff's claim that the defendants are trying to "re-depose" him.

Nor has the plaintiff has cited legal authority holding that Dr. Gaskell's examination may not exceed the scope of Dr. Culotta's examination. The plaintiff makes a sort of "sauce-for-the-goose-sauce-for-the-gander" argument, asserting that because "the scope of Dr. Culotta's examination of Plaintiff

16

expressly excluded any inquiry into issues pertaining to Plaintiff's interactions with Defendants during the Payne homicide[,]" dkt. no. 85 at 2, Dr. Gaskell should similarly exclude such inquiry. The plaintiff asserts that if the court does not limit Dr. Gaskell's examination to the scope of Dr. Culotta's examination, "Plaintiff will be unfairly prejudiced by Dr. Gaskell's examination exceeding the scope of his expert's examination." Id. at 3. But he doesn't explain *how* he will be prejudiced. Nor does the plaintiff explain why Dr. Culotta did not inquire about these topics when, as discussed above, they appear to be relevant to the plaintiff's damages. The plaintiff reminds the court that he is "intellectually and physically limited," and asserts that he already has been subjected to a deposition that resulted in 389 pages of transcript. Id. at 2. But that does not explain how he will be prejudiced if Dr. Gaskell asks him about the defendants' interactions with him, or why Dr. Culotta did not enquire about those interactions. Without some legal authority or further explanation of why Dr. Culotta did not inquire into these topics, it is not clear why the court should prohibit Dr. Gaskell from inquiring about relevant information simply because Dr. Culotta elected not to ask about these topics.

The plaintiff asserts that the defendants "will not suffer prejudice" if the court restricts Dr. Gaskell's questioning. The plaintiff contends that "[t]o the extent Dr. Gaskell believes Plaintiff's whereabouts on the night of the murder or his interrogation of the Defendants is relevant to his exam, which it is not, he can review Defendants' deposition of Plaintiff in this matter." Dkt. No. 85 at 3. This argument assumes that Dr. Gaskell's examination is an adversarial

deposition. It can't be a deposition; although he is the defendants' expert, Dr. Gaskell is not a party. And the plaintiff appears to have agreed that what Dr. Gaskell will be conducting is a Rule 35 examination—a *medical* examination. To that end, Dr. Gaskell needs to be able to ask whatever questions will assist him in assessing the plaintiff's mental condition. In the context of a Rule 35 exam, the question is not whether a party will be "prejudiced" by the questions the examiner asks, but whether the examiner can resolve any "controversy" over the party's "mental . . . condition."

The plaintiff also argues that his counsel will not be present during the examination. This argument is related to the plaintiff's concern that Dr. Gaskell will treat the examination as an adversary process. Again, however, a Rule 35 examination—which the plaintiff apparently has agreed that Dr. Gaskell's exam will be—serves a different function than a deposition, and unlike depositions, Rule 35 examinations typically are not attended by counsel or recorded because courts "have recognized that the presence of third parties or recording devices at Rule 35 examinations constitutes an intrusion into the evaluative process[.]" Scheriff, 2008 WL 2434184, at *1. That "evaluative process" is intended to assess the "mental or physical condition" of a given party, Fed. R. Civ. P. 35(a)(1), so courts have been hesitant to introduce factors that "could adversely affect [] test results." Jump, 2015 WL 9701166, at *1. The plaintiff has agreed to treat Dr. Gaskell's exam as a Rule 35 exam, not an adversarial interrogation, so the fact that the plaintiff's counsel will not be present is not

18

relevant. (As the defendants point out, they agree that their counsel will not be present, either.)

Because the parties have agreed to treat Dr. Gaskell as a Rule 35 examiner, Dr. Gaskell should conduct his examination of the plaintiff as he sees fit. See Does 1-5, 2019 WL 2076260, at *3 ("The Court will not micro-manage how Dr. Goldstein, a licensed medical professional skilled in her field, chooses to perform her testing."). Dr. Gaskell "is bound by medical ethics to use [his] medical judgment to evaluate Plaintiff[,]" Haymer, 2013 WL 657662, at *6-7. The plaintiff has asserted a causal connection between his alleged damages and his interactions with police during the Payne investigation, making the plaintiff's interactions with the defendants during that investigation relevant. Dkt. No. 1 at ¶77-82.

Although the court will deny the plaintiff's motion to limit Dr. Gaskell's examination, the parties remain free to argue about the admissibility at trial of any of the topics of his examination should Dr. Gaskell testify at trial.

## V. Conclusion

The court **DENIES** the plaintiff's Civil L. R. 7(h) expedited non-dispositive motion to limit the scope of Dr. Gaskell's Rule 35 examination of the plaintiff. Dkt. No. 85.

Dated in Milwaukee, Wisconsin this 31st day of March, 2024.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge